STATE OF MAINE                                        UNIFIED COURT
KENNEBEC, SS.                                     Criminal
                                                  Docket No. CR-2016-309

|  |  |  |
|---|---|---|
| STATE OF MAINE | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER ON MOTION TO SUPPRESS** |
| | ) | |
| | ) | |
| MARCUS McLAUGHLIN, | ) | |
| Defendant. | ) | |

This matter comes before the court on the Defendant's Motion to Suppress all evidence obtained as a result of a traffic stop that occurred on December 14, 2016 in Augusta, Maine that led to his arrest and prosecution for aggravated trafficking in scheduled drugs. An evidentiary hearing was held on May 18, 2017 where the court heard testimony from Detective Michael Bickford and Deputy Aaron Moody of the Kennebec County Sheriff's Office. At the hearing, the court also accepted into evidence certain documents by agreement and took judicial notice of the court's own docket.

In his motion, the Defendant argues that law enforcement did not have reasonable articulable suspicion to justify the traffic stop. The State argues that the stop was legally justified because the operator of the vehicle in which the Defendant was a passenger was under court ordered conditions at the time of the traffic stop that subjected her to random search and testing for illegal drugs. The State offers no other justification for the traffic stop.

To determine the constitutionality of a traffic stop, the court must decide whether the police acted "on the basis of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" State v. Griffin, 459 A.2d 1086, 1089 (Me. 1983); Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968). For a stop to be justified, "the court clearly must find that the police *actually* had such a suspicion at the time of the investigatory stop." State v. Chapman, 495 A.2d 314, 317 (Me. 1985). The stop can't be justified by information obtained after the time of the stop. Id.

The only factual issue in dispute here is whether the law enforcement officers involved in the traffic stop actually knew that the operator of the vehicle in question was on court ordered conditions at the time of the stop[1].

---

[1] In State v. Diana, 2014 ME 45, ¶17, the Law Court discusses the "significantly diminished" expectation of privacy that a probationer has compared to an ordinary citizen and the lower standard of justification required for a search of a probationer. The Law Court has not addressed whether the same lower standard applies when a person is on administrative release. In this case, the Defendant does not argue that the stop of the vehicle would not have been justified if the

1

What should be a simple factual determination is complicated by the uncertain testimony of Detective Bickford and the inconsistencies in the officers' written reports.

In his testimony, Detective Bickford said that he had dealt with the driver as a defendant in several prior drug cases, but he was not exactly sure of any convictions resulting from those cases. He testified that he knew on the day in question that she was on conditions that allowed search and testing for drugs and dangerous weapons[2] but he was unsure whether the driver was on bail conditions, probation conditions, or administrative release conditions. Detective Bickford initially testified that he did not recall if he checked to see what conditions applied to the driver on December 14, 2016, though he later said he probably checked. He said that he knew the driver was on conditions of release at one time and on conditions of probation after that, though the evidence presented in the hearing established that the driver was not on probation on December 14, 2016 and was instead on administrative release. Detective Bickford's testimony was also unclear as to what information was available to law enforcement online about conditions and what information could only be obtained from dispatch or a court. Detective Bickford's testimony was further undermined during cross-examination when inconsistencies between his police report and his sworn probable cause affidavit were exposed[3].

In contrast to Detective Bickford, Deputy Moody's testimony was straightforward and credible. He testified he made the traffic stop at issue at the request of Detective Bickford and that Detective Bickford told him that the female operator was under search conditions for drugs. He testified that he did not conduct a computer search on the driver before making the stop and relied entirely on the information provided by Detective Bickford for the justification of the stop. He also testified that the online system available to law enforcement in their cars shows only if a person is on bail or probation but does not include if an individual is on administrative release. He also testified credibly that the system does not always show what conditions apply to an individual and that the actual conditions sometimes need to be obtained by calling a court.

The evidence presented at the hearing establishes that on December 14, 2016, the driver was on administrative release and was subject to random search and testing for drugs. This is not in dispute.

---

officers involved actually knew the driver was under search conditions at the time of the stop. In Diana there was no dispute that the officer actually knew that the defendant was on probation at the time of the challenged search.

[2] Neither the bail bond that was applicable to driver until October 4, 2016 nor the Administrative Release conditions that applied to the driver after that included any conditions related to dangerous weapons. The bail bond that the driver had been subject to until October 4, 2016 did not include any search conditions.

[3] In jury instructions, jurors are routinely told that the testimony of a law enforcement officer is to be evaluated in the same way as that of any witness, and is not automatically entitled to any greater or lesser weight solely because the witness is a police officer. The court applies the same rule when it is called upon to evaluate law enforcement testimony as the fact-finder.

It is the court's finding of fact that Detective Bickford did not check on December 14, 2016 to determine if the driver was subject to search conditions. If Detective Bickford had checked the system available to law enforcement, it would have become apparent to him that the driver was in fact not on bail or probation. Only a more thorough search, likely requiring a phone call which he undoubtedly would have remembered and testified about, would have revealed that she was on administrative release and what conditions applied.

Because Detective Bickford did not check to determine if the driver was subject to search conditions on December 14, 2016, it is the court's finding of fact that he could not and did not actually know that she was subject to any search conditions. He had a hunch that she was under conditions based on his past dealings with her but he did not know she was subject to search conditions at that time[4].

It is imperative that officers confirm that search conditions remain applicable before conducting a search of an individual or their property. Bail, probation, and administrative release conditions often allow significant intrusion into the privacy and liberty of the individuals subject to the conditions. Application of such conditions can, as was the case here, also impact associates and family members of the individuals covered. Such conditions regularly change and individuals subject to conditions one day may not be subject to the same conditions the next. Only confirmation of currently applicable conditions will ensure that law enforcement officers are acting lawfully. That did not occur here[5].

The purpose of the exclusionary rule is to deter police misconduct and prevent the State from benefitting from that misconduct by foreclosing the State's opportunity to use illegally obtained evidence against the accused at trial. State v. Bailey, 2012 ME 55, ¶ 16, 41 A.3d 535. In this case, Detective Bickford's failure to confirm that the driver of the vehicle was subject to any conditions before having her vehicle stopped was police misconduct. Initiating a stop based on possible search conditions is unreasonable unless action is taken to confirm that such conditions actually are in effect before the stop. The Defendant's Motion to Suppress is therefore GRANTED and any evidence obtained against the Defendant as a result of the December 14, 2016 traffic stop is therefore suppressed and may not be used against the Defendant at trial.

Dated: August 15, 2017

JUSTICE, MAINE SUPERIOR COURT

---

[4] The fact that Detective Bickford's hunch turned out to be true based upon information obtained after the stop was initiated does not cure the constitutional infirmity. See State v. Chapman, 495 A.2d at 317.

[5] The State has not argued that the good faith exception applies here. Detective Bickford, in failing to confirm that search conditions applied, was not acting in good faith in causing the stop to be made.

3